## Appeal of Loggia Nuova Giuseppe Verdi No. 1483

*Eugene G. Mirarchi,* for appellant.

*Spencer Hill,* for appellee.

TROUTMAN, J., March 18, 1946.—This appeal is from the refusal of the Pennsylvania Liquor Control Board to grant a club liquor license to Loggia Nuova Giuseppe Verdi No. 1483, which lodge is located in the Borough of Kulpmont, Northumberland County, Pennsylvania. The reason assigned by the board for the refusal of the license was that the quota of licenses for the Borough of Kulpmont is exceeded.

It was stated to the court that the applicant club meets all the physical requirements and is a bona fide club, and that the quota is the only thing that prevents the issuance of this license.

The legal position taken by the Liquor Control Board is that the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS, §§744-1001, 1002, limiting the number of licenses for the retail sale of liquor, malt, or brewed beverages to be issued by the Pennsylvania Liquor Control Board under the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, applies to club licenses such as applied for by this applicant. The Liquor Control Board claims that the issuance of this license would exceed the quota for the Borough of Kulpmont.

The act in question became law on June 24, 1939, and since that time the various courts of quarter sessions in Pennsylvania have been called upon to interpret and apply the act which has resulted in an almost equal division among the courts of the various counties on the question whether or not clubs are to be included in the Quota Act or whether they are exempt therefrom.

The title of the Liquor License Quota Act of June 24, 1939, P. L. 806, reads as follows:

"An Act Limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defining hotels, and prescribing the accommodations required of hotels in certain municipalities."

Section 2 of the Quota Act provides:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality, except in municipalities where the electors have voted against the granting of any retail licenses. Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

The first portion of the second section of the act deals with the manner in which the quota shall be

computed. It is clear that hotels and clubs shall not be counted in determining the quota. It is likewise clear that the words "of any class" refer to all classes, so that both beverage licenses and liquor licenses shall be added together in counting the quota.

The last portion of this section of the act is the part that has caused the confusion and dissension in the many cases which have attempted to decide this question. It is necessary to examine the Pennsylvania Liquor Control Act and the Beverage License Law with regard to clubs in order to interpret properly the Liquor License Quota Act with respect to the issuance of club licenses. Such an examination reveals that the word " 'club' shall mean any reputable group of individuals associated together not for profit but for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor shall be only secondary". The applicant in this case meets all the requirements of the definition above quoted.

Both the Pennsylvania Liquor Control Act and the Beverage License Law define the terms "sale" or "sell" as "any transfer of liquor, alcohol or malt or brewed beverages for a consideration." Both acts in the case of club licenses restrict sales to club members only.

The Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, sec. 403, provides:

". . . the board *shall*, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, *may, in its discretion,* issue a license. . . ." (Italics supplied.)

The Beverage License Law of June 16, 1937, P. L. 1827, sec. 6 (a) provides, in part, as follows:

". . . upon being satisfied of the truth of the statements in the application . . . that the applicant seeks a license for a reputable hotel, eating place or club . . . the board *shall*, in the case of a hotel or eating

place, grant and issue, and, in the case of a club, *may, in its absolute discretion*, grant and issue, to the applicant a retail dispenser's license." (Italics supplied.)

We at once observe that it was mandatory on the board to grant any number of hotel and restaurant licenses, so long as they complied with the requirements of the act, and therefore their numbers increased to such an extent as to create a nuisance and, in order to remedy this situation, the legislature enacted the Liquor License Quota Act. It follows that the evil which the legislature desired to remedy by the Liquor License Quota Act was to limit the mandatory duty of the board with respect to restaurant and eating place licenses, in other words the corner saloon. This same evil did not exist with respect to clubs because neither the Pennsylvania Liquor Control Act nor the Beverage License Law made the issuance of club licenses mandatory, but rather left the matter entirely in the absolute discretion of the board, and the board has the right under the law to exercise this discretion.

Both the Pennsylvania Liquor Control Act and the Beverage License Law provide that, upon the refusal of any license, the applicant may appeal to the court of quarter sessions, which shall hear the case de novo. This right of appeal is given to all applicants. However, in the case of the board refusing to issue a club license, the court must be satisfied that the board acted unlawfully or grossly abused its discretion before reversing the board's action. Our courts have almost uniformly held that the section of the act giving the right of appeal to the court of quarter sessions does not intend that the said court of quarter sessions shall become an independent licensing authority, but only that the court shall ascertain whether or not the orders made by the Liquor Control Board are lawful, free from prejudice, abuse, bias and oppression. See Easton Athletic Club License, 27 Northampton 349, 351. This is

especially true in the case of club licenses, because the acts give the board the power and authority to exercise its absolute discretion, and we most certainly would not interfere with the exercise of its discretion in the absence of gross abuse. See Appeal of Legion Home Association of Danville, 48 D. & C. 123, 129, 130.

After a very careful review of the various cases and interpretations of the Quota Act, we are of the opinion that the Liquor License Quota Act of June 24, 1939, P. L. 806, does not and was not intended to apply to clubs and does not forbid the granting of a club liquor license notwithstanding the fact that the quota of retail licenses for the municipality has already been exceeded.

This court is inclined to agree with the reasoning of Judge Wilson in In re License of I. B. P. O. E. of W., John F. Moorland Lodge No. 801, 42 D. & C. 222, in which the court held that the Quota Act does not restrict the issuance of further club licenses where the quota established by the act has been filled.

In In re License of I. B. P. O. E. of W., John F. Moorland Lodge No. 801, supra, Judge Wilson, at pages 227 and 228, says:

"The question still remains: Shall club licenses of either class be included in the calculation of the quota? Our opinion is that they should not. The Quota Act must be considered as a part of and amendment to the Liquor and Beverage Acts. Also we must presume that the legislature is a continuing intelligent entity, which acts in character, consistently with its past. The title of the Quota Act gives no notice of an intention to include clubs, and section 1 specifically considers only 'hotels' and 'persons'. 'Person' is defined in the exact words of the Liquor Act; and the Liquor Act, by its specific definitions of 'association', 'corporation', and 'club', clearly indicates that 'club' cannot be included in the meaning of either 'association' or 'corporation'.

As the distribution of liquor and beverages by clubs is restricted to members, and in the light of the history of and decisions ruling liquor and clubs, wherein such distribution to members was not a technical sale, it is doubtful if 'clubs' 'sell' liquor or beverages to their members. In former times the money passed over the bar of a club was a mere counter of the withdrawal of a member's share in a common stock, and which was used to replenish such stock. We are convinced that the Quota Act does not and was not intended to apply to clubs, and that, if 'club licenses' are included within its provisions, it is unconstitutional, the title being defective and in contravention of article III, sec. 3, of the Constitution. As said Quota Act, in effect, only limits the number of new restaurant licenses, it is therefore constitutional. The opinion of President Judge Keller, in Kester's Appeal, 140 Pa. Superior Ct. 293, goes no farther than this, as the matter before the court was a restaurant liquor license."

The concluding words of the second sentence of section 2, that "no new license, except for hotels . . . shall be granted so long as said limitation is exceeded", are neither confusing nor ambiguous, nor do they contradict the limitation prescribed in the first sentence of said section, as the limitation goes only to restaurant licenses.

The first sentence of section 2 of the act very definitely places both hotels and clubs outside of the classes of licenses to be limited by the act. The legislative intent to place a limitation or quota only on restaurant and eating-house licenses up to the last sentence of section 2 is perfectly clear on the face of the act. Throughout the entire act appears no intention to limit or establish a quota for hotel licenses, either on a basis of population or any other basis, nor does there appear in this act any expressed intention to limit or place a

quota on club licenses on a basis of population or any other basis.

If the last phrase of the second sentence of section 2 of the act is to be construed to be a theoretical suspension of the issuing of new club licenses, then, clearly, the title to the act fails to disclose any such purpose, and, if the act be so construed, it is unconstitutional so far as club licenses are concerned: Appeal of Thomas P. Lambert Post No. 2540, V. F. W., 49 D. & C. 281.

Throughout the history of liquor legislation, clubs have been placed in a separate and distinct class. The dispensing of liquor by clubs is confined solely to its members. It is questionable whether a club actually sells liquor in the same sense as it is sold by a retail restaurant licensee. The handling of liquor by a club is entirely secondary to the purposes of its organization and any profit derived therefrom is purely incidental, while a retail dispenser is engaged in the business solely for profit. We have already shown that the liquor control board has discretionary powers in the issuance of club licenses which it does not possess in the case of restaurant licenses.

It is doubtful whether club licenses would ever have been considered in the Quota Act by any court had the word "clubs" not appeared in the first sentence of section 2. The fact that the word "clubs" has been omitted from the last sentence of section 2 does not bring such licenses within the limitation of the act. A "hotel" license carries with it all of the privileges of a retail liquor license in that a hotel may sell to the general public and offer liquor for sale to guests not only of the hotel but those who may frequent its taproom or its dining room. A hotel licensee may sell to the general public and is in the same class as a retail restaurant or eating-house license in this respect. The legislature excepted hotels from the limitation of the act because a hotel license, being in the same category as retail

restaurant licenses, would come within the limitations of the act unless such licenses were specifically made an exception. The Quota Act does place additional restrictions on the definition of a "hotel", which may obtain a license in excess of the quota. It was not necessary for the legislature to add the word "clubs" to the exception because there was no intention to include club licenses in the limitations of the act.

Let us consider the Liquor License Quota Act with respect to the issuance of club licenses in the light of the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, which provides:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions. . . .

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

We are of the opinion that the words of the Liquor License Quota Act are not explicit, because in the first section of the act it includes hotels and clubs and in the last section it excepts hotels only. Applying the matters contained in section 51 of the Statutory Construction Act to the Liquor License Quota Act, it becomes obvious that club licenses are not within the Quota Act.

The first matter we have already discussed and are satisfied that there was no occasion or necessity for the Quota Act with respect to clubs.

As to the second matter, the circumstances under which the law was enacted indicate that club licenses were not within the act, because the Quota Act followed the enactment of the Liquor Control Act and Beverage License Law and was not deemed necessary until it developed that the mandatory provisions of the prior acts were creating an over-abundance of licensed restaurants or eating-places, not an over-abundance of bona fide clubs.

The third matter, that is, the mischief to be remedied, seems to be obvious that the mischief which the act was directed against was the public restaurants and eating-places which were becoming so numerous in some localities that it was difficult for any one of them to operate a profitable establishment. This difficulty was certainly not true with clubs.

The fourth matter directs the court to consider the object to be attained by the act. We believe the object to be attained by the Quota Act was to place a limitation on the mandatory provisions in the Liquor Control Act and the Beverage License Law, so that the public establishments would have a sufficient distribution of population to be able to conduct a well-managed, respectable place at a profit. We cannot see any object to be attained by the Quota Act in regard to clubs. The legislature recognized the distinction between a club license and a restaurant or eating-place license in the first section of the act and clearly stated that club licenses are not to be counted in figuring the quota. This indicates that the Quota Act applies only to restaurant and eating-place licenses, because the quota is based on one establishment for each 1,000 inhabitants and, since clubs and hotels are not to be counted in figuring the quota, the quota can always be filled with restaurant and eating-place licenses, irrespective of the number of clubs or hotels in the municipality. It necessarily follows that the object to be attained by

the Quota Act was to limit the public restaurants and eating-places to one establishment for each 1,000 inhabitants or fraction thereof, without regard to hotels and clubs.

The fifth matter, viz., the former law, is not applicable, because there was no former law, nor are there any other laws upon the same or similar subjects.

In relation to the sixth matter, which relates to the consequences of the particular interpretation, we are of the opinion that no serious consequences will result from our interpretation but we do believe that our interpretation will promote the public welfare. The board has ample power, in the exercise of its discretion, to refuse the issuance of a club license which may be detrimental to the community.

The seventh matter, being the contemporaneous legislative history, is not applicable because this is a new act and has very little, if any, legislative history.

The eighth and last matter mentioned in section 51 deals with legislative and administrative interpretations of the law. The Attorney General, in his opinion, held that the Liquor License Quota Act does restrict the number of club licenses which may be granted. (See opinion of Attorney General Reno in Club Liquor License Quota, 36 D. & C. 225.) The 1941 legislature, seeing the many misinterpretations which the various courts had placed upon the enactment, attempted to clarify and give us a legislative interpretation of the Liquor License Quota Act by passing an act which specifically exempted clubs from the Quota Act. This act was vetoed by the Governor, but it is still helpful, inasmuch as it shows that the legislature intended to exempt clubs from the limitation of the Quota Act, and that their enactment of 1941 sought to overcome the confusion occasioned by the Quota Act with regard to clubs.

Under section 52 of the Statutory Construction Act, supra, we find the following provisions:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain; . . .

"(5) That the Legislature intends to favor the public interest as against any private interest."

Applying these presumptions, we believe our interpretation to be correct, because our result is not absurd, and our conclusion impossible of execution or unreasonable, but rather makes the act workable, effective, consistent, certain, reasonable and just. Our interpretation of the Quota Act renders the entire statute effective and certain. The licensing of hotels and restaurants, to the exclusion of reputable clubs, favors private interest as against public interest, and the presumption is that such was not the intention of the legislature.

We conclude that the Liquor License Quota Act does not place any limitations upon the number of club licenses which the Liquor Control Board may issue, and that the legislature did not intend such a limitation.

Therefore, we are of the opinion that the only reason assigned by the Liquor Control Board to sustain its refusal to issue this club license is invalid, and this appeal should be sustained. Inasmuch as the Pennsylvania Liquor Control Board has already conducted a hearing on this license application and has found that the applicant meets all the physical requirements and is a bona fide club, it is unnecessary to refer the matter to the board for further hearing.

### Order

And now, March 18, 1946, the appeal is sustained, and, it is ordered, adjudged and decreed that the Pennsylvania Liquor Control Board issue to appellant, Log-

gia Nuova Giuseppe Verdi No. 1483, 271 Poplar Street, Borough of Kulpmont, Northumberland County, Pennsylvania, a club liquor license upon compliance by this appellant with the statutory requirements and any rules and regulations of the board pertinent thereto; the costs of this proceeding to be paid by appellant.